Fred Pabst, Sr. v. Commissioner.
Pabst v. Commissioner
Docket No. 12645.
United States Tax Court
1947 Tax Ct. Memo LEXIS 41; 6 T.C.M. (CCH) 1186; T.C.M. (RIA) 47300; October 31, 1947
Frederic Sammond, Esq., 735 N. Water St., Milwaukee, Wis., for the petitioner. William Schwerdtfeger, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This proceeding seeks a review of a determination of deficiency in gift tax for the year 1943 in the amount of $19,377.88. The question presented is: What was the value on August 26, 1943 of 650 shares of common stock of the Comet Company, which on said date were given by petitioner to a trust in which he and others were trustees? Findings of Fact The facts are all stipulated and the stipulation is adopted. From the stipulation we copy the following: Petitioner is an individual residing in the town of Summit, Waukesha County, Wisconsin. He filed his gift tax return for the year 1943 with the collector *42 of internal revenue at Milwaukee, Wisconsin. On August 26, 1943, petitioner made a gift of 650 shares of the common stock of the Comet Company to himself and others as trustees of a trust created by Ida C. Pabst, petitioner's wife, on August 19, 1935. The beneficiaries of this trust were petitioner's six children and one grandchild. On petitioner's 1943 gift tax return these shares were valued at $98,800, or $152 per share. The Comet Company was originally organized under the laws of Wisconsin in 1920 as the Pabst Corporation. It was engaged in the manufacture of malt products until 1932 when it transferred all of its assets to the Premier Malt Company of Delaware. The latter company changed its name to Premier-Pabst Corporation and later to the Pabst Brewing Company, whereas the Pabst Corporation changed its name to the Comet Company. The Comet Company, in exchange for its assets, received common and preferred stock in the transferee corporation. From 1941 until some time after August 26, 1943, the stock of the Pabst Brewing Company was held as follows: Type of
Total Shares
Owned by Owned by
Stock
Outstanding
Comet Co.
Others
Preferred
90,150
41,265
48,885
Common
1,065,978
223,215
842,763
*43 The holders of the preferred stock were entitled to be paid dividends of $6 per share per year before any dividends were paid to holders of common stock, such preference to be cumulative, and were entitled upon liquidation to $100 per share. The preferred stock was non-voting and of no-par value. Each share of preferred stock was convertible into four shares of common stock and was callable at $110. The common stock was voting and of no par value. The Pabst Brewing Company (formerly the Premier-Pabst Corporation) has been engaged since 1932 in the manufacture and sale of malt products, principally beer since the repeal of prohibition. The Comet Company since 1932 has had the characteristics of what is now a personal holding company. It has only one class of stock and on August 26, 1943, and for many years prior thereto, 28,727 shares were outstanding, approximately 85 per cent of which was owned by petitioner or members of his family. Twenty-nine stockholders held all of the shares of Comet Company stock, twenty-one persons being the beneficial owners. Fourteen of these persons are members of the Pabst family. The Comet Company stock is not listed on any exchange, and there were *44 no published quotations, offers by brokers or sales made for many years prior to, during, or since 1943. On December 31, 1942, the Comet Company, in addition to the 41,265 shares of preferred and the 223,215 shares of common stock of the Pabst Brewing Company, had $288.25 in cash and had a liability of $69,261.90 in accrued and unpaid income taxes. These were its only assets and liabilities. The common and preferred stock of the Pabst Brewing Company was listed on Comet Company's books as having a book value of $1,586,867.74. The net earnings of the Comet Company after taxes and the dividends paid by it for the five-year period from 1938 to 1942, inclusive, were as follows: Dividends
Net Earnings
Paid on
Year
After Taxes
Common Stock
1938
$ 421,285.72
$ 416,680.27
1939
444,256.03
447,279.39
1940
420,649.38
422,574.17
1941
435,948.58
433,777.70
1942
416,178.98
417,977.85
Totals
$2,138,318.69
$2,138,289.38
Average
427,663.74
427,657.88
Per Share
14.887
14.887 For the year 1943 the Comet Company had net earnings after taxes of $429,833.34 and paid dividends of $426,317.77 or $14.84 per share of common stock. The consolidated *45 balance sheets of the Pabst Brewing Company and its whollyowned subsidiaries per books as of December 31, 1942 and December 31, 1943, were as follows: December 31,
December 31,
Assets
1942
1943
Cash
$ 2,543,337.45
$ 2,642,034.74
Marketable Secu-
rities
1,328,613.75
1,713,113.78
Accounts Receivable - Net
4,695,118.82
3,869,755.09
Inventories
5,553,969.21
9,555,916.71
Other Assets
928,384.37
1,575,158.38
Plant Properties and
Equipment - Net
10,272,588.50
9,698,517.15
Trade Marks, Good
Will, Etc.
343,251.50
343,251.50
Deferred Charges
371,693.50
380,319.43
Total
$26,036,957.10
$29,778,066.78
Liabilities and
Capital
Accounts Payable
$ 830,665.94
$ 997,447.78
Accrued Wages
184,372.42
313,833.05
Accrued Real Estate
Tax
222,552.11
185,163.02
Accrued Social Secu-
rity Tax
67,433.76
97,548.70
Accrued Federal
Capital Stock Tax
50,625.00
70,625.00
Accrued Federal and
State Income
Taxes
4,174,644.43
6,486,353.77
Liability for Re-
turned Containers
2,930,281.69
2,248,805.66
Reserves
205,724.05
680,007.82
Capital Stock: Preferred -
90,150 shares
Common -
1,065,978 shares
2,899,725.01
2,899,225.01
Surpplus
14,470,932.69
15,799,056.97
Total
$26,036,957.10
$29,778,066.78
*46 The net earnings of the Pabst Brewing Company and its wholly-owned subsidiaries for the five-year period from 1938 to 1942, inclusive, were as follows: Net Earnings
Year
After Taxes
1938
$ 2,697,262.55
1939
2,562,237.41
1940
2,100,206.00
1941
3,013,778.83
1942
2,969,348.49
Total for 5 years
$13,342,833.28
Average
$ 2,668,566.66 The net earnings after taxes of the Pabst Brewing Company and its wholly-owned subsidiaries for the year 1943 were $3,006,411.08. The dividends paid by the Pabst Brewing Company, classified as to shares, for the years 1939 to 1943, inclusive, are as follows: Old Class A. Preferred
New Preferred
New Common
Year
Aggregate
Per Share
Aggregate
Per Share
Aggregate
Pershare
1939
$69,775.00
$5.00
$552,611.97
6.13
$1,172,556.80
$1.10
1940
35,516.55
4.85
540,897.00
6.00
1,065,978.00
1.00
1941
540,900.00
6.00
1,172,575.80
1.10
1942
540,900.00
6.00
1,172,575.80
1.10
1943
540,900.00
6.00
1,172,386.80
1.10
The total distributed and undistributed profits of the Pabst Brewing Company and the amount of undistributed profits per share of new common *47 stock outstanding for the years 1939 to 1943, inclusive, are as follows: Undis-
tributed
Amount
Per
Total
Total
Share
Distributed
Undistributed
of
Year
Profits
Profits
Common
1939
$1,794,943.77
$ 767,293.64
$ .72
1940
1,642,391.55
457,814.45
.43
1941
1,713,475.80
1,300,303.03
1.22
1942
1,713,475.80
1,255,872.69
1,18
1943
1,713,286.80
1,293,124.28
1.21
The stock of the Pabst Brewing Company was not listed on any exchange. It did, however, have an over-the-counter market at which the price received from July 1, 1943, to December 27, 1943, varied from $16 to $18 per share. On August 26, 1943, the price range was from $17 to $17.50 per share. The preferred stock on the over-the-counter market from June 14, 1943, to December 30, 1943, varied from $102 to $109 per share. On July 14, 1943, the mean price per share was $104.50 and on September 11, 1943, the mean price per share was $106.50. These sales constituted the sales nearest the date of the gift both before and after said gift. During 1943 the total sales of common stock were 12,720 shares and of preferred stock 692 shares. On February 26, 1943, all *48 of the Pabst Brewing Company preferred stock was held by 255 different persons, thirteen of whom held 68.91 per cent of the shares; and all of the Pabst Brewing Company common stock was held by 293 persons, 28 of whom held 74.82 per cent of the shares. The value of the Comet Company stock on August 26, 1943, was $212 per share. Respondent determined the value of said stock on said date to be $265.57. Opinion The assets of the Comet Company, other than its stock in the Pabst Brewing Company, on August 26, 1942, were negligible and its liabilities, although possibly of a substantial amount, are unascertainable from the record. We only know that these liabilities consisted of $69,261.90 accrued unpaid income tax on December 31, 1942. The stipulation of fact is devoid of sufficient material on which we could estimate the accrual of unpaid income tax, if any, as of August 26, 1943. Therefore, our first task is to determine the market value of the holdings of Comet Company in the Pabst Brewing Company. Regulations 108, section 86.19 (c), covering the valuation of the class of stocks involved herein, says: "(c) Stocks and bonds. - The value at the date of the gift in the case *49 of stocks and bonds, within the meaning of the statute, is the fair market value per share or bond on such date. * * *
"In the case of stocks and bonds which are not listed upon an exchange, but are dealt in through brokers, or have a market, the fair market value shall be determined by taking the mean between the highest and lowest selling prices as of the date of the gift; or, if there were no sales on that date, such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the date of the gift (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of the gift, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of the gift. * * *" The sales of the Pabst Brewing Company stock during 1943, while not large in relation to the outstanding stock, were of sufficient quantity to bring the valuation of said stock within the purview of the above regulations and, applying the same, we find that the market value of Pabst Brewing *50 Company common stock on August 26, 1943, was $17.25 and the value of the preferred was $105.93. Thus we obtain the following figures: Pabst Brewing Co.
Common
223,215
$17.25
$3,850,458.75
Pabst Brewing Co.
Preferred
41,265
$105.93
4,371,201.45
Total Net Worth
$8,221,660.20 Since the Comet Company had outstanding 28,727 shares of stock the net worth of each share on August 26, 1943, was $286.20, when the "net worth" is assumed to be the theoretical liquidated value of the Pabst Brewing Company stock. Petitioner contends that these figures do not reflect the true net worth of Comet Company stock because if the Comet Company desired to realize that net worth, the sale of such a large block of unlisted stock would necessitate a substantial discount which the seller would have to pay in order to cover promotional and underwriting expenses. He also suggested an additional discount because such a sale would indicate to the public that the Pabst interests "are unloading." As a result of all these factors petitioner submits as a fair net worth figure for the Comet Company stock $241.32 per share. The suggested "blockage discount" principle would seem to *51 be in possible conflict with the premise of a "willing buyer" and it would also seem to impose a different measure of value for large blocks of stock than for small blocks. Nevertheless since the decision by this Court of Sewell L. Avery, 3 T.C. 963, the recognition of some blockage discount has been approved by this Court in spite of a vigorous dissenting opinion therein. We would therefore apply some blockage discount in the case at bar if the actual sale of the Pabst Brewing Company stock were reasonably to be anticipated as a method of liquidating the Comet Company. As a matter of fact this holding company has assets consisting of stock in but one operating company and said stock would be easily divisible among the Comet Company stockholders. It would be both foolish from a tax saving point of view and would incur much needless expense to sell this stock in order to liquidate Comet Company. By far the most expedient method of liquidation would be a distribution in kind among the stockholders. Furthermore such a distribution in kind would remove all danger of the effect of a rumor of "unloading" by the Pabst interests, even if that rumor did not seriously interfere *52 with the necessary premise of a willing seller free from all forms of compulsion. Therefore in computing the net worth of the Comet Company stock we do not feel that there is any persuasive evidence in the record that the hazards and expense of a sale of a block of Pabst Brewing Company stock would follow the liquidation of this holding company. In fact, such a sale would be both unnecessary and undesirable. In Estate of Frank A. Cruickshank, 9 T.C. 162 (promulgated July 21, 1947), the Court says: "The property forming the source of the corporation's income would presumably serve its purpose if it were retained for the collection of income. The cost of conversion into cash is hence not a deduction called for by the character of the corporate business." Our next consideration is to determine the earning power and dividend paying capacity of the Comet Company stock. The stipulation shows that for the five years preceding 1943 this stock had paid dividends of $14.887 per share and in 1943 paid approximately the same amount. This income arose approximately in equal proportions from the common and preferred stock of the Pabst Brewing Company. From all of the facts in *53 this case and the arguments submitted in the briefs the value of each share of Comet stock, based upon the earning capacity of that stock, would be $226.21. Having computed the net worth value of Comet Company stock and its income-producing value, our next consideration is all of the other factors surrounding the stock which would affect its market value if the stock were being sold by an informed willing seller to an informed willing buyer, neither of whom is under compulsion. This being an unlisted stock with no sales record, there would undoubtedly be some expense attached to the sale of the Comet Company stock on the over-the-counter market not ordinarily encountered in the regular sale of listed stocks. Such expense is not of the type excluded from consideration in Estate of Frank A. Cruickshank (promulgated July 31, 1947), 9 T.C. 162. This Court in Thomas A. Standish, 8 T.C. 1204, held that unusual expenses should be considered in computing the market value of the stock involved. The Comet Company is also a holding company. The testimony in this case is persuasive that holding company stock generally sells for a considerable discount below the net *54 worth value of the stock which it holds. The companies cited in evidence were largely those having investment portfolios containing a variety of investments which were constantly changing and they had managerial expenses which the Comet Company did not have. The findings in the case at bar show that the Comet Company distributed practically all of its income to its stockholders, deducting little or nothing for administrative expenses. Nevertheless it is our conclusion that some discount should be taken from the net worth value of the stock involved to determine the value of the stock in the holding company. Petitioner has cited one holding company where this differential was as much as fifty per cent. Furthermore, the Comet Company is a closely held family corporation. This is an additional factor which we feel should be considered in computing the value of the Comet Company stock on the open market. Minority stock interests in a closed corporation are usually worth much less than the proportionate share of the assets to which they attach. Cravens v. Welch, 10 Fed. Supp. 94. We have therefore concluded in considering all of the factors discussed in this opinion, in *55 the briefs, the stipulation of facts and the expert testimony in this case, that the market value of each of the 650 shares of the Comet Company stock on August 26, 1943, was $212. This is a discount from the theoretical net worth value of said stock of $74.20 per share and it is $53.57 a share less than the determination of the Commissioner but it would produce an income of seven per cent on a stock, one-half of the income of which comes from a preferred security and we feel that it represents a value in harmony with all of the surrounding factors. Decision will be entered under Rule 50.